

NUMBER 13-16-00309-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DAVID ROBERTSON,                                                            Appellant,

v.

OKSANA ROBERTSON,                                                          Appellee.

On appeal from the 148th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Benavides
Memorandum Opinion by Justice Contreras**

This is the second appeal from the underlying divorce proceeding between appellant David Robertson and appellee Oksana Robertson. *See Robertson v. Robertson*, No. 13-14-00523-CV, 2015 WL 7820814 (Tex. App.—Corpus Christi Dec. 3, 2015, no pet.) (mem. op.) ("*Robertson I*"). David appeals from an amended divorce decree. David raises four issues, asserting that the trial court erred by: (1) signing the

amended decree without hearing evidence or characterizing the property which he argued was his separate property; (2) awarding Oksana $15,000 in appellate attorney's fees; (3) failing to render judgment in his favor for fifty percent of the costs of the first appeal; and (4) correcting a judicial error with a judgment nunc pro tunc. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

We recount the necessary facts from the first appeal to place our post-remand analysis in context.

### A. Robertson I

In *Robertson I*, David appealed a divorce decree granted in favor of Oksana after she presented to the trial court a marital agreement the parties had executed.[1] The marital agreement contained a partition of property and an allocation of income detailed in four schedules: A, B, C, and D.[2] David argued in *Robertson I* that the entire marital agreement was invalid and unenforceable, while also alleging that the proceeds from two lawsuits—half of which had been awarded to Oksana per Schedule D—were his separate property. David, however, did not complain about any property listed and awarded to Oksana under Schedule B.

After analyzing the allocation of income contemplated by Schedule C of the marital agreement, we held that particular allocation void because the only income partitioned

---

[1] Because the trial court found the marital agreement to be valid and enforceable to dispose of the entire marital estate, it did not hear any evidence on the characterization of any of the parties' property.

[2] Schedule A identified properties that were to be David's separate property after the divorce. Schedule B identified properties that were to be Oksana's separate property after the divorce. Schedule C contained an allocation of income. Schedule D listed properties that the parties would continue to own jointly: (1) a coin collection and (2) the proceeds from two lawsuits regarding a work-related injury David suffered prior to his marriage to Oksana.

2

was David's separate property.[3]  *Id.* at *6–7.  As to the to the marital agreement's validity

and enforceability *as a whole*, we found that:

> Though the agreement cannot function to partition or exchange property that is already characterized as separate, we determine that it could effectively recharacterize the remaining community property interest between the parties, thereby creating the intended separate properties contemplated by the marital agreement.  To the extent the marital agreement purports to partition or exchange the parties' community property, it is sufficient to do so, and we conclude that the portion of the marital agreement that partitions or exchanges the Robertson's community property into the other's separate property is valid.[4]

*Id.* at *6 (citations omitted).  This Court further stated that the proceeds from David's two

lawsuits were David's separate property, and he could not be divested of them.  *Id.* at *9–

10.  Thus, we affirmed "in part the portion of the judgment based on the agreement to

partition or exchange community property, and reverse[d] in part the trial court's judgment

divesting David of his separate property and remand[ed] for further proceedings

consistent with [the] opinion."  *Id.* at *10.  We also held that, for failing to object at the trial

court, David had waived any complaint as to the award of trial and appellate attorney's

fees to Oksana.  *Id.*  Finally, we divided the appellate costs equally between the parties.

### B. Proceedings After Remand

On remand, Oksana filed a "Motion for Entry of Final Decree" and attached an

amended divorce decree, which she argued complied with our opinion in *Robertson I*.

The amended decree was almost identical to the one entered prior to the first appeal,

except that Oksana removed all awards to her of the property which we stated was

---

[3] The only income listed in the allocation-of-income section of the marital agreement was the monthly compensation David receives for the work-related injury he suffered prior to his marriage to Oksana.  *See Cottone v. Cottone*, 122 S.W.3d 211, 213 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (recognizing that even when the injury occurs during marriage, recovery for personal injuries is generally the spouse's separate property).

[4] The agreement the parties executed did not comply with the statutory conditions to validly partition any of their separate property.  *See* Tex. Fam. Code Ann. § 4.203 (West, Westlaw through 2017 1st C.S.).

David's separate property: (1) the proceeds from his two lawsuits and (2) David's monthly check listed in Schedule C's allocation-of-income section of the marital agreement. These items were listed as David's separate property in the amended decree. Furthermore, Oksana changed the language pertaining to the award of appellate attorney's fees from a conditional award "[i]n the event that [Oksana] shall prevail in the appeal of this matter" to an unconditional statement that Oksana "shall have [an] additional judgment against [David] for her reasonable and necessary appellate attorney's fees of $15,000."

The trial court set a hearing on Oksana's motion for May 31, 2016. On May 27, 2016, David filed an amended counter-petition for divorce seeking to show that some of the property being awarded to Oksana in the amended decree was either a mixed-character asset or his separate property.[5] All of the property that David sought to contest was listed in Schedule B. On May 30, 2016, David filed a response to Oksana's motion restating that the amended divorce decree could not divest him of his separate property, which he again identified.

At the hearing, Oksana argued that the "amended final decree . . . keeps all the language . . . that the Court of Appeals affirmed [and] deletes the language that the Court of Appeals reversed . . . ." Oksana argued that this Court affirmed the division of property in schedules A and B, reversing only schedule C, and "instructed [the trial court] to enter a new Final Decree of divorce in conformity with [our] ruling." The trial court agreed with

---

[5] David claims that: (1) the house in Corpus Christi awarded to Oksana is a mixed-character asset; (2) funds in a bank account awarded to Oksana are his separate property; and (3) a portion of the gold coins awarded to Oksana are his separate property.

David also argued that funds in the registry of the court were proceeds from the lawsuits, which we stated were his separate property in *Robertson I*. *See Robertson v. Robertson*, No. 13-14-00523-CV, 2015 WL 7820814, at *9 (Tex. App.—Corpus Christi Dec. 3, 2015, no pet.) (mem. op.) ("*Robertson I*"). However, David does not raise an issue on appeal about the funds in the registry of the court.

4

Oksana and signed the amended divorce decree. The judgment read that it was "pronounced and rendered" on July 7, 2014, but "ministerially" signed on May 31, 2016. The trial court did not issue findings of fact or conclusions of law. David filed his notice of appeal on the same day.

## II. DISCUSSION

### A. Characterization of Property

By his first issue, David asserts that the trial court erred in signing an amended divorce decree after *Robertson I* without hearing evidence and characterizing the property in dispute. In response, Oksana contends David is precluded from disputing the character of the property because the law-of-the-case doctrine bars it and because he waived those issues in *Robertson I*. We construe the issue to be whether the amended divorce decree complied with our opinion in *Robertson I*.

#### 1. Scope of Remand

"Generally, when an appellate court reverses and remands a case for further proceedings, and the mandate is not limited by special instructions, the effect is to remand the case to the lower court on all issues of fact, and the case is opened in its entirety." *Simulis, L.L.C. v. Gen. Elec. Capital Corp.*, 392 S.W.3d 729, 734 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Creative Thinking Sources, Inc. v. Creative Thinking, Inc.*, 74 S.W.3d 504, 510–11 (Tex. App.—Corpus Christi 2002, no pet.). On the other hand, when an appellate court "remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue." *Hudson*, 711 S.W.2d at 630; *Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d 303, 309 (Tex. App.—Corpus Christi 2012, pet. denied); *see Creative Thinking*, 74

5

S.W.3d at 510. For a reversal to be limited to particular fact issues, it must be clearly apparent from the decision that the appellate court intended to do so. *Hudson*, 711 S.W.2d at 630. The scope of the remand is determined by looking to both the mandate and the opinion. *Id.*; *Corpus Christi Day Cruise*, 398 S.W.3d at 309. A trial court's failure or refusal to comply with a court of appeals' opinion and mandate is an abuse of discretion. *See Lee v. Downey*, 842 S.W.2d 646, 648 (Tex. 1992) (orig. proceeding); *see also Dean's Campin' Co. v. Hardsteen*, No. 13-05-00468-CV, 2008 WL 3984161, at *10 (Tex. App.—Corpus Christi Aug. 29, 2008, pet. denied) (mem. op.).

### 2. Applicable Law

"[T]he characterization of property as community or separate—in other words, the determination of to whom the property belongs—matters most when a marriage ends." *Robertson I*, 2015 WL 7820814 at *2 (quoting W. Michael Wiist, *Trust Income: Separate or Community Property?*, 51 BAYLOR L. REV. 1149, 1153 (Fall 1999)); *see* TEX. FAM. CODE ANN. §§ 7.001, 7.002 (West, Westlaw through 2017 1st C.S.). Typically, in the context of a divorce, the spouses' community property is subject to a "just and right" division by the trial court. *Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011); *see Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex. 1997); *see, e.g.*, TEX. FAM. CODE ANN. §§ 7.001– 7.004 (West, Westlaw through 2017 1st C.S.). However, a trial court, in performing its just and right property division, is not authorized to divest either spouse of his or her separate property. *See Eggemeyer*, 554 S.W.2d at 140; *Cameron v. Cameron*, 641 S.W.2d 210, 215 (Tex. 1982). Such divestment is clearly unconstitutional and in violation of statute. *See Eggemeyer*, 554 S.W.2d at 139–40; *Cameron*, 641 S.W.2d at 214; *see also* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 7.001.

6

The character of marital property is a mixed question of law and fact. *See* TEX. FAM. CODE ANN. § 6.711(a) (West, Westlaw through 2017 1st C.S.); *Welder v. Welder*, 794 S.W.2d 420, 432–33 (Tex. App.—Corpus Christi 1990, no writ). The Texas Family Code creates a statutory presumption that all property possessed by either spouse during or upon dissolution of marriage is community property. TEX. FAM. CODE ANN. § 3.003(a) (West, Westlaw through 2017 1st C.S.). A party claiming property as their separate property has the burden of rebutting the community-property presumption. *Pearson*, 332 S.W.3d at 363. If the presumption is not rebutted, the court must characterize the property as community property, even if that characterization is ultimately incorrect. *See Id.*

### 3. Analysis

In the case at hand, there is no language in our previous opinion or mandate providing special instructions or indicating we limited the scope of remand to any particular issue. *See Robertson I*, 2015 WL 7820814, at *10. Instead, this Court affirmed in part and reversed in part and remanded "for further proceedings consistent with [our] opinion." *Id.* Therefore, the case was reopened in its entirety on all issues of fact that were not disposed of in the portion of the original final decree which we affirmed. *See Hudson* 711 S.W.2d at 630; *Simulis*, 392 S.W.3d at 734. That included the characterization of the income listed in Schedule C's allocation of income and the proceeds from David's two lawsuits.[6]

---

[6] We stated in *Robertson I* that these assets are David's separate property. *See id.* at *6–7, 9. However, the only issue in that appeal was whether the trial court erred in granting Oksana's motion for summary judgment. *See id.* at *2. David did not move for summary judgment. Therefore, by stating that the allocation of income and lawsuit proceeds were David's separate property, we were demonstrating only that Oksana had not shown herself entitled to judgment as a matter of law on those issues. *See* TEX. R. CIV. P. 166a(c). We could not render judgment in David's favor on these issues because he did not move for summary judgment. The issues therefore were remanded to the trial court to resolve, whether via summary judgment or full trial on the merits.

7

As noted, determining the character of marital property is a mixed question of law and fact. *See* Tᴇx. Fᴀᴍ. Cᴏᴅᴇ Aɴɴ. § 6.711(a). Oksana argues that the law-of-case doctrine bars David from challenging the character of the property he seeks to dispute in this second appeal. We agree. Under this doctrine, the decisions made on questions of law on appeal govern the case throughout its subsequent stages. *Hudson* 711 S.W.2d at 630; *see Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). In *Robertson I*, we affirmed "the portion of the judgment based on the agreement to partition or exchange community property." *Robertson I*, 2015 WL 7820814 at *6. By doing so, we ruled as a matter of law on the characterization of the properties covered in that portion of the judgment. In other words, to the extent we affirmed the summary judgment as to the agreement's characterization of property (i.e., the disposition under Schedule B), David is now precluded from challenging that characterization.

By filing her motion to enter an amended decree—which was based on our partial affirmance of the trial court's summary judgment in her favor—Oksana argued to the trial court that she was entitled as a matter of law to an amended divorce decree including the disposition in Schedule B. *See* Tᴇx. R. Cɪᴠ. P. 166a(c); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296–97 (Tex. 2011); *see also In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72 (Tex. 2008) (the nature of a motion is determined by its substance, not its title or caption). In support of this, Oksana attached a copy of our opinion from *Robertson I*, a copy of the original decree entered before the first appeal, a copy of the marital agreement, and a copy of the amended divorce decree.

After our mandate in *Robertson I*, our judgment on the sections of the marital agreement which we affirmed became the judgment of the trial court. *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.—Dallas 2011, no pet.)*; see*

8

*Cook v. Cameron*, 733 S.W.2d 137, 139 (Tex. 1987). Thus, Oksana was entitled as a matter of law to the dispositions mandated by Schedule B.

As to the income listed in Schedule C and David's proceeds from his two lawsuits, the trial court's judgment had been nullified, leaving the judgment as to those issues as if it had never been rendered. *Cessna Aircraft Co.*, 345 S.W.3d at 145; *In re S.S.G.*, 208 S.W.3d 1, 3 (Tex. App.—Amarillo 2006, pet. denied); *see also Swank v. Cunningham*, 258 S.W.3d 647, 663 (Tex. App.—Eastland 2008, pet. denied) (reversal of judgment returns parties to status quo). We held in *Robertson I* that David could not be divested of these properties, and, accordingly, the amended divorce decree listed these as David's separate property. Therefore, the amended divorce decree properly disposed of the remaining issues after *Robertson I*, and we conclude that the amended divorce decree, to the extent it provided for the disposition of property, complied with our opinion from the first appeal.

We overrule David's first issue.

## B. Appellate Attorney's Fees

By his second issue, David contends that the trial court erred when it awarded Oksana $15,000 in appellate attorney's fees.

### 1. Applicable Law

Generally, a court may award appellate attorney's fees in a proceeding to enforce a divorce decree. *Cook*, 733 S.W.2d at 141; *see* TEX. FAM. CODE ANN. § 9.014 (West, Westlaw through 2017 1st C.S.). An award of appellate attorney's fees under section 9.014 of the Texas Family Code is reviewed for an abuse of discretion. *See Cook*, 733 S.W.2d at 141. The test for an abuse of discretion is "whether the court acted without reference to any guiding rules and principles." *Cire v. Cummings,* 134 S.W.3d 835, 838–

9

39 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex. 1985)).  The trial court's ruling should be reversed only if it was arbitrary or unreasonable.  *Cummings,* 134 S.W.3d at 839.

An award of appellate attorney's fees must be contingent upon the appellant's unsuccessful appeal.  *Picket v. Keen*, 47 S.W.3d 67, 78 (Tex. App.—Corpus Christi 2001, no pet.).  To do otherwise would penalize a party for pursuing a meritorious appeal.  *Schlueter v. Schlueter,* 975 S.W.2d 584, 590 (Tex. 1998); *Picket*, 47 S.W.3d at 78.  Thus, "[a]n appellee may not recover attorney's fees for work performed on any issue of the appeal where the appellant was successful."  *Lynch v. Lynch*, No. 01-16-00573-CV, 2017 WL 4054167, at *21 (Tex. App.—Houston [1st Dist.] Sept. 14, 2017, pet. filed) (quoting *Jacks v. G.A. Bobo*, No. 12-10-00163-CV, 2011 WL 2638751, at *5 (Tex. App.—Tyler June 30, 2011, pet. denied) (mem. op.)); *Pickett*, 47 S.W.3d at 78.  However, an appellee may still recover attorney's fees for work performed on any issue of the appeal where the appellant was unsuccessful.  *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex. App.—Dallas 1988, writ denied).  If a party is entitled to attorney's fees from the adverse party on one claim but not another, the party claiming attorney fees must segregate the recoverable fees from the unrecoverable fees.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006).  Thus, an appellee must segregate her appellate attorney's fees when the appellant is partially successful in an appeal.  *See Smith*, 757 S.W.2d at 426.

### 2.  Analysis

Here, the initial divorce decree awarded Oksana $15,000 for appellate attorney's fees on the condition that she prevail on the first appeal.  However, although Oksana prevailed on some of the issues in *Robertson I*, David also prevailed on the issues regarding the validity of the allocation of income and the separate character of the

10

proceeds from his two lawsuits. Yet, the language in Oksana's amended divorce decree granted her an unqualified judgment for the entire $15,000. Given that Oksana's appellate attorney spent time addressing an issue on which David was successful, the attorney's fees award should have been reconsidered in light of that success. *See Prudential Ins. v. Durante*, 443 S.W.3d 449, 515 (Tex. App.—El Paso 2015, pet. denied). The attorney's fees for time spent on addressing the issues on which David prevailed should have been segregated from the recoverable fees on the issues on which Oksana prevailed, but they were not. *See Tony Gullo Motors*, 212 S.W.3d 299 at 311. Therefore, the trial court erred when it granted Oksana $15,000 for appellate attorney's fees.

Accordingly, we reverse the award of all appellate attorney's fees and remand to the trial court for a determination of the reasonable amount of appellate attorney's fees to be awarded to Oksana in view of the fact that David was partially successful in the first appeal. On remand, Oksana must segregate the recoverable fees from the unrecoverable fees. *See Tony Gullo Motors*, 212 S.W.3d at 313.

We sustain David's second issue.

### C. Appellate Costs

By his third issue, David contends that the trial court erred by failing to render judgment in his favor for fifty percent of the costs of the first appeal.

#### 1. Applicable Law

Once the appellate court renders judgment and issues its mandate, the trial court has a ministerial duty to comply with the mandate. *See* TEX. R. APP. P. 51.1(b); *Seger v. Yorkshire Ins.*, 503 S.W.3d 388, 408 (Tex. 2016). The trial court has no discretion to review or interpret the mandate. *In re Marriage of Grossnickle*, 115 S.W.3d 238, 243 (Tex. App.—Texarkana 2003, no pet.); *see Cessna Aircraft Co.*, 345 S.W.3d at 144.

11

When the judgment of an appellate court becomes final, the statute contemplates immediate execution for costs on appeal. *City of Garland v. Long*, 722 S.W.2d 49, 50 (Tex. App.—Dallas 1986, orig. proceeding) (discussing former TEX. R. APP. P. 88, now TEX. R. APP. 51.1). And, if the appellate court reverses and remands, the trial court will need to enter further orders to enforce the appellate court's judgment. *See* TEX. R. APP. P. 51.1(b).

### 2. Analysis

Here, the bill of costs from *Robertson I* shows a total of $2,897.61, and our mandate specified that the appellate costs were to be divided equally among the parties. However, the amended decree of divorce ordered that the costs of the appeal be borne by the party who incurred them. Therefore, the trial court erred by not dividing the costs of the first appeal between the parties. *See* TEX. R. APP. P. 51.1(b); *Seger*, 503 S.W.3d at 408; *In re Marriage of Grossnickle*, 115 S.W.3d at 243; *City of Garland*, 722 S.W.2d at 50.

Oksana cites Texas Rule of Appellate Procedure 51.1(b) to assert that the trial court did not have to make any further order in the case, but the rule is inapplicable when, as here, an appellate court remands for further proceedings. *See* TEX. R. APP. P. 51.1(b).

We sustain David's third Issue.

## D. Judgment Nunc Pro Tunc

By his fourth issue, David contends that the trial court's judgment is void because it is a judgment nunc pro tunc.

### 1. Applicable Law and Standard of Review

After a trial court loses its plenary power over a judgment, it can correct only clerical errors in the judgment by a judgment nunc pro tunc. *Escobar v. Escobar*, 711 S.W.2d

12

230, 231 (Tex. 1986); *see* TEX. R. Civ. P. 316, 329b(f); *In re Dryden*, 52 S.W.3d 257, 262 (Tex. App.—Corpus Christi 2001, no pet.). A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered. *See Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986); *In re Dryden*, 52 S.W.3d at 262. A clerical error does not result from judicial reasoning or determination. *Andrews*, 702 S.W.2d at 585. Conversely, a judicial error arises from a mistake of law or fact that requires judicial reasoning to correct. *Butler v. Cont'l Airlines, Inc.*, 31 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). "A judicial error occurs in the *rendering* as opposed to the *entering* of judgment." *Escobar*, 711 S.W.2d at 231 (emphasis in original); *see In re Daredia*, 317 S.W.3d 247, 249 (Tex. 2010).

If the trial court signs a corrected judgment while it still has plenary power, it is a modified judgment, not a judgment nunc pro tunc. *See Alford v. Whaley*, 794 S.W.2d 920, 922 (Tex. App.—Houston [1st Dist.] 1990, no writ). And, if the trial court attempts to correct a judicial error by signing a judgment nunc pro tunc after its plenary power expires, the judgment is void. *Morris v. O'Neal*, 464 S.W.3d 801, 808 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex.1973); *Wood v. Griffin & Brand*, 671 S.W.2d 125, 132 (Tex. App.—Corpus Christi 1984, no writ). Whether an error is clerical or judicial is a matter of law; therefore, we review this question de novo. *Tex. Dep't of Pub. Safety v. Moore*, 51 S.W.3d 355, 358 (Tex. App.—Tyler 2001, no pet.); *see In re Dryden*, 52 S.W.3d at 262.

### 2. Analysis

Here, on remand, jurisdiction was reinstated in the trial court to conduct proceedings consistent with our *Robertson I* opinion. *See* TEX. R. APP. P. 43.2, 43.3, 51.1(b); *see, e.g.*, *Cessna Aircraft Co.*, 345 S.W.3d at 144 ("On remand, the filing of the

13

mandate with the trial court vests the trial court with limited jurisdiction, as defined by the parameters of the mandate, to decide those issues specified in the mandate."). Rule 51.1(b) states that the "trial court need not make any further order in the case" when the court of appeals affirms, modifies and affirms as modified, or renders. TEX. R. APP. P. 51.1(b). Implicit in the Rule is the necessary procedural fact that if the appellate court disposes of the case in another manner—such as here, affirming in part and reversing in part—a new order must be entered by the trial court. *See id.*

As discussed earlier, a trial court must comply with an appellate court's mandate, looking to the court of appeals' judgment for guidance on how to proceed. *Hudson*, 711 S.W.2d at 630; *Corpus Christi Day Cruise*, 398 S.W.3d at 309; *Cessna Aircraft Co.*, 345 S.W.3d at 144. In this case, that required the entry of a new judgment that included those parts of the original judgment which were affirmed on appeal and disposed of the issues that were not affirmed on appeal, and the amended divorce decree did just that.

David complains that the judgment is a judgment nunc pro tunc because it states that it was "pronounced and rendered" on July 7, 2014, but "ministerially signed" on May 31, 2016. We disagree. David overlooks the fact that a trial court's judgment goes through a "metamorphosis . . . following review of that judgment on appeal." *Cessna Aircraft Co.*, 345 S.W.3d at 145. "When an appellate court affirms a trial court's judgment . . . , that judgment becomes the judgment of both courts." *Id.* (citing *Cook* 733 S.W.2d at 139). As noted, the original divorce decree was not reversed in its entirety, and the trial court's amended divorce decree resolved the only issues remaining after *Robertson I*; the amended divorce decree was a proper modified judgment of the one rendered in 2014. We conclude that the trial court's amended divorce decree was not a judgment nunc pro tunc.

We overrule David's fourth issue.

### III.    OKSANA'S MOTION TO DISMISS

During the pendency of this appeal, Oksana filed a motion to dismiss the appeal, arguing that David had acquiesced to, and accepted benefits from, the original and the amended judgment.  In support, Oksana points to the following actions that have taken place since the signing of the original divorce decree:  (1) David deeded the house in Corpus Christi to Oksana; (2) Oksana refinanced the mortgage on the Corpus Christi house under her name alone; (3) David cooperated in the refinancing of the Corpus Christi home; (4) David sold lots of real property in Corpus Christi which had been awarded to him; and (5) David paid off a line of credit that had been secured by the house in Corpus Christi.

### A.  Applicable Law

"The acceptance-of-benefits doctrine is . . . anchored in equity and bars an appeal if the appellant *voluntarily* accepts the judgment's benefits and the opposing party is thereby [irremediably] *disadvantaged*." *Kramer v. Kastleman*, 508 S.W.3d 211, 217 (Tex. 2017) (emphasis added).  It "is a fact-dependent, estoppel-based doctrine focused on preventing unfair prejudice to the opposing party." *Id.* at 214.  "[M]erely using, holding, controlling, or securing possession of community property awarded in a divorce decree does not constitute clear intent to acquiesce in the judgment and will not preclude an appeal absent prejudice to the nonappealing party." *Id.* at 228.  "Whether estoppel of the right to appeal is warranted involves a fact-dependent inquiry entrusted to the courts' discretion." *Id.*  "The burden of proving an estoppel rests on the party asserting it, and the failure to prove all essential elements is fatal." *Id.* at 217.

15

The Texas Supreme Court noted that the acceptance-of-benefit doctrine presents unique concerns in the context of divorce and emphasized the importance of the presence of prejudice to the opposing party in applying the doctrine.  *See id.* 218–19.  In *Kramer*, the Texas Supreme Court elaborated that:

> before denying a merits-based resolution to a dispute, courts must evaluate whether, by asserting dominion over assets awarded in the judgment under review, the appealing party clearly intended to acquiesce in the judgment; whether the assets have been so dissipated as to prevent their recovery if the judgment is reversed or modified; and whether the opposing party will be unfairly prejudiced.

*Id.* at 227.

In determining if the acceptance-of-benefit doctrine applies, appellate courts look to a nonexclusive list of factors.  *See id.* at 229.  They include:

> 1) whether acceptance of benefits was voluntary or was the product of financial distress;
>
> 2) whether the right to joint or individual possession and control preceded the judgment on appeal or exists only by virtue of the judgment;
>
> 3) whether the assets have been so dissipated, wasted, or converted as to prevent their recovery if the judgment is reversed or modified;
>
> 4) whether the appealing party is entitled to the benefit as a matter of right or by the nonappealing party's concession;
>
> 5) whether the appeal, if successful, may result in a more favorable judgment but there is no risk of a less favorable one;
>
> 6) if a less favorable judgment is possible, whether there is no risk the appellant could receive an award less than the value of the assets dissipated, wasted, or converted;
>
> 7) whether the appellant affirmatively sought enforcement of rights or obligations that exist only because of the judgment;
>
> 8) whether the issue on appeal is severable from the benefits accepted;
>
> 9) the presence of actual or reasonably certain prejudice; and
>
> 10) whether any prejudice is curable.

16

*Id.* The doctrine "applies 'when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.'" *Id.* at 219 (quoting *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)).

### B. Analysis

To prevail on her motion to dismiss based on the acceptance-of-benefits doctrine, Oksana must prove that David's actions were voluntary *and* that she will be prejudiced if the case is remanded. *See id.* at 217, 227–28; *In re Marriage of Stegall*, 519 S.W.3d 668, 672–73 (Tex. App.—Amarillo 2017, no pet.).

We find voluntariness lacking on David's part as it relates to: (1) David deeding the house in Corpus Christi to Oksana; (2) Oksana refinancing the mortgage on the Corpus Christi house under her name alone; (3) David cooperating in the refinancing of the Corpus Christi home; and (4) David paying off the line of credit secured by the Corpus Christi home.

David was ordered by the original divorce decree to deed the house in Corpus Christi to Oksana and to give her all documents necessary to have "full and complete access to both mortgages . . . ." Additionally, the amended divorce decree ordered David to pay the line of credit secured by the Corpus Christi home, and it ordered Oksana to make the payments on the mortgage for the house. However, the amended decree did not order Oksana to refinance the mortgage secured by the Corpus Christi home.

First, given that it was mandated by the divorce decrees, we cannot conclude that David's deeding of the house to Oksana,[7] or his payment of the line of credit secured by

---

[7] Oksana also filed a motion to compel David to execute the deed. David deeded the house to Oksana before the trial court could rule on that motion.

17

it, was voluntary on his part. *See Kramer*, 508 S.W.3d at 231. Second, in regard to the mortgage refinance, this was pursued by Oksana and she makes no argument, nor is there evidence in the record, that David pushed for or initiated the transaction. Instead, the record and Oksana's motion reflect the opposite: David "had to cooperate" with Oksana as she pursued the refinance. In doing so, David executed a power of attorney permitting Oksana to negotiate checks for the balance of an escrow account, but only after she chose to refinance the property during the appeal and filed a motion to compel him to do so.[8] Because these actions were not voluntary on David's part, the acceptance-of-benefits doctrine does not bar him from this appeal. Further, the only prejudice to Oksana that is apparent in all of this are the costs she incurred from the refinance, something she did not have to pursue and was not voluntary on David's part.

Finally, Oksana's other complaint—that David sold the other lots awarded to him in the divorce decree—is also not meritorious. The benefit accepted by David (i.e. the lots) is not at issue on appeal and cannot be affected by reversal; Oksana does not deny his right to retain these properties, and our opinion in *Robertson I* controls the disposition of the parties' community property. *See Robertson I*, 2015 WL 7820814 at *6. Therefore, even though David's sale of the lots was voluntary, Oksana is unable to show that she would be prejudiced upon remand by this, and David's appeal is not barred by this action. *See Kramer*, 508 S.W.3d at 218; *Carle v. Carle*, 243 S.W.2d 1002, 1004 (Tex. 1950) ("Where an appellant accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment he is not estopped to prosecute an appeal which involves only his right to a further recovery.").

---

[8] Like the motion filed to compel David to deed the house to Oksana, David executed the power of attorney before the trial court could rule on that motion.

18

Based on the record before us, we conclude the circumstances do not reflect David's clear intent to acquiesce in the judgment's validity. *See Kramer*, 508 S.W.3d at 229–30.

We deny Oksana's motion to dismiss.

## IV.    CONCLUSION

We reverse the trial court's judgment to the extent it awards attorney's fees and costs. We affirm the remainder of the judgment. The cause is remanded for further proceedings consistent with this opinion.

DORI CONTRERAS
Justice


Delivered and filed the
21st day of December, 2017.